Johnson, J.
Although exception to the charge of the-court are not specifically made, yet as we have all the evidence as well as the charge, it is proper to examine it in connection with the evidence, in order to determine whether the verdict and judgment are according to law and evidence. Marietta & Cincinnati R. R. v. Strader, 29 Ohio St. 452.
*343 This transaction was a wager, or bet, on the result of an election, and therefore void. Thomas v. Crouse, 16 Ohio, 54; Lucas v. Harper, 24 Ohio St. 328.
It is a fact, admitted in the pleading, and not controverted by the evidence, that before the election which' was to determine the wager, Harper returned and offered to re-deliver the horse to Crain, but he refused to receive it, because, as he states in his reply, “ the defendant had kept said horse as his property for the space about two months from and after the sale and delivery thereof to him, whereby,-and by reason of the fault of the defendant, the said horse liad materially depreciated in value, and that the plaintiff had lost the use thereof in his business.”
The pleadings thus made up presented, aside from the question of value, but one issuable fact, i. e., whether the plaintiff had the right to refuse to receive back the horse and sue for its value, on the ground that the defendant had converted him to his own use; or rather, whether his excuse for not receiving back the horse, for the reason set up in his reply above quoted, was valid.
That the horse was delivered to Harper under a wager contract, and that there was an offer to return, and a refusal to receive, before the election, was admitted by the pleadings.
Upon this state of fact, what were the rights of the parties ?
The statute prohibits such contracts, and gives a right of action to recover back to the loser.
Independent of this statute, there was no remedy for the loser, where the money or property had been delivered, as the law would not lend its aid to a party either in the execution or rescission of such a contract.
The.maxim, “ex turpi ca/usa, non oriter actio” applies in such cases, and leaves the parties where it finds them. Where property or money was lost, under a wager, prohibited by public policy, or by statute, it was the policy of the law to afford no remedy to the loser, because he was in pari delicto with the winner.
Again, in all cases of contracts prohibited by statute, or which are void as against public policy, the law allows a day for *344 repentance, while the contract remains executory. “ He who advances money in consideration of a promise or undertaking to do such a thing, may, at any time before it is done, rescind the contract, and prevent the thing from being done, and recover back the money.
. “ But it would seem obvious, that if he delays rescinding until hi's rescission is inoperative, and the thing will still be done, although the contract, at the time of the rescission, was in form executory, it should come under the same rule as an executed contract for unlawful purposes.” 2 Parsons on Cont. 746, note v; Hooker v. De Palos, 28 Ohio St. 251; McAllister v. Hoffman, 16 S. & R. 147.
McAllister v. Hoffman was an action to recover back money in the hands of a stakeholder, deposited as a bet upon an eleclion..- After the election, the loser, upon notice-to the stakeholder hot to pay, the winner brought this action against the stakeholder, to recover it back.
. There was no statute in Pennsylvania, as in this state, authorizing a recovery back, but there was an act prohibiting such wagers.
It is there said, that by narrowing the locus penitential to the interval between the period of betting and the happening of the contingency, the object of the statute will best be promoted. Within this interval of time, the policy of the law is to allow either party to rescind an unexecuted contract, and to reinstate himself to his original status.
It being an admitted fact, that before the election Harper offered to return the horse and Crain refused to receive it, it follows that this offer was in the exorcise of a lawful right to rescind, unless, at the time of such offer, there had been such a conversion of -the property as excused Crain from the dury of receiving back the property.
By the clear weight of the testimony, and indeed there is scarcely a shadow of proof to the contrary, the horse was in as good, if not in a better, condition when the offer to return was made, than he was when delivered to defendant in August. It was therefore the duty of plaintiff to surrender the noto and take back-the horse. His excuse, as pleaded, to say nothing of *345 the want of proof to sustain it, for not receiving back the horse, was based in part, if not wholly, on untenable ground. It was, that defendant had had the usé of him for about two months as his own, whereby, and by reason of the fault of the defendant, and also that the plaintiff had lost the use thereof 'in his business.
Two of these three reasons, to wit, the plaintiff’s loss of use, •and defendant’s use of the horse for two months as his own, without acts amounting to a conversion, did not deprive the •defendant of his right to rescind, nor excuse the plaintiff from Jais duty to take back the property.
Upon this state of pleading and of fact, the court charged the jury that plaintiff was entitled, under the statute, to recover the value of the horse, unless that right was defeated by the facts stated in the answer.
Notwithstanding the admitted offer to rescind and the refusal to accept, the plaintiff’s right to recover the value of the property, as a loser, is assumed by the court, unless defendant, upon whom the burden is cast, by the charge of the court, establishes the truth of the allegation of his answer.
In effect, this was telling the jury that the plaintiff might, '-under the statute, recover, not the property m specie, but its value, without also showing that defendant had comverted it to ■his own use, and in the face of the offer to surrender the prop•erty, and plaintiff’s refusal to receive it. This was clearly •erroneous.
Lucas v. Harper, 24 Ohio St. 328, was a case somewhat like the present. It was a sale of hogs at nine cents per pound, which were worth less than half that sum, to be paid for when H. G. should be elected.
The hogs were delivered, under this contract, to defendant, who converted them to his own use. After the election and •defeat of II. Gf, an action was brought to recover the market value of the hogs, under the act of 1831, and it was held that the transaction was a wager, and that the person losing might maintain this action against the winner under that act.
The case at bar differs from that in two material points : 1st, In this there is the absence of any proof of conversion, while *346 in that there was an actual conversion; and 2d, In this the contract was rescinded before the election, while in that it was not.
Assuming that this action under this statute to recover back the property is maintainable, we think the plaintiff should prove, as he has alleged, that defendant has converted the property to his own use.
There should have been as demand and refusal to deliver,, which in law would amount to a conversion, or such an actua£ conversion as would have rendered a demand useless. Certainly, after defendant had offered to return the property, and the offer was refused, and when he was holding it as a merebailee for plaintiff, with reasonable and ordinary care, as the.proof shows, he was not liable for its conversion.
The amended petition was based upon this theory, for it alleges that plaintiff “ has disposed of and converted ” the horse-to his own use. This petition was filed, after the sale of the horse, in March, 1873, as stated in the answer, long after suit, brought, and such sale was not made by defendant as owner,, but as bailee of Crain.
Resides this, the rights of the parties were to be determined as they existed when the action was commenced, in December previous.
At that time, there is no pretense that there was anything-which, in law or in fact, amounted to a conversion. The proof abundantly shows that the horse was then in as good, if not ini better, condition than when delivered in August, and that defendant was at all times not only ready and willing to deliver back the property, but urgent that plaintiff should receive it,, and that the latter insisted on his keeping it, and paying the-agreed price.
To allow the plaintiff to recover the value of the horse upon the conceded facts of this case, would, in effect, enable him to-enforce a contract which is null and void, and that too, after it had been lightfully rescinded, without showing any act of defendant which, in law or fact, amounted to a conversion.
It is a matter of serious doubt whether such an action can be maintained under the statute, where the wager is withdrawn or the contract is rescinded before the contingency lias happened,, *347 which determines it; but assuming, for the purposes of this case, that it can, we hold, that where, between the making of the contract and the happening of the contingency, either party elects to rescind, and offers to deliver back the money or property, which offer is refused, he is not liable for its value under the statute, without a showing that, before the .commencement of the action, he has, by a refusal to deliver on demand, or by some other act amounting to conversion, made himself liable for conversion of the property.
"We pass without consideration all other questions appearing-upon the record, and reverse the judgments below, on the ground that they are contrary to the law and the evidence.